21 P.3d 850

Raymond HANLEY, Applicant,

Brenda Hanley, Natural Mother and Guardian for and on Behalf of Jaime Hanley and Amanda Hanley, Minor Children of Raymond Hanley, Petitioner–Applicant Party in Interest,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Allen Saffrahn & Kim Saffrahn, G & M Auto Shoppe # 6B, Respondent Employer,

Special Fund Division/No Insurance Section, Respondent Carrier.

In re the Marriage of Raymond Harold Hanley, Respondent,

v.

Brenda Mae Hanley, Petitioner–Appellant.

Nos. 1 CA–IC 00–0085, 1 CA–CV 00–0355.

Court of Appeals of Arizona, Division 1, Department A.

April 17, 2001.

Ely, Bettini, Ulman, Insana & Turley by J. Wayne Turley, Phoenix, Attorneys for Petitioner–Applicant Party in Interest/ Petitioner–Appellant Brenda Hanley.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Paula R. Eaton, The Industrial Commission of Arizona, No Insurance Section, Special Fund Division, Phoenix, Attorney for Respondent Carrier.

## OPINION

GERBER, Judge.

¶ 1 This case involves a consolidated appeal from a Maricopa County Superior Court judgment and a Rule 10 special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review. The judgment determined that the ICA Special Fund Division/No Insurance Section ("Special Fund") complied with an order of assignment by paying fifty percent of an incarcerated claimant's workers' compensa-

tion disability benefits for child support. The award and decision upon review dismissed for lack of jurisdiction a request for relief under Arizona Revised Statutes Annotated ("A.R.S.") subsection 23–1061(J) (1995). For the reasons that follow, we reverse the judgment but affirm the award and decision upon review.

## PROCEDURAL HISTORIES

¶ 2 When Raymond· Hanley suffered a compensable industrial injury while working for an uninsured employer, the Special Fund processed his claim and paid him workers' compensation benefits. *See* A.R.S. § 23–907(B) (1995). In 1993, the ICA approved a compromise and settlement between him and the Special Fund that stipulated that he suffered a seventy-five percent reduction in earning capacity and was entitled to monthly benefits of· $560.00 for a permanent partial disability.

¶ 3 In 1994, Raymond was convicted of several serious felonies and sentenced to the Arizona State Prison for a long term. In December 1997, relying on A.R.S. subsection 23–1031(A), the Special Fund issued a notice suspending his disability compensation. A.R.S. § 23–1031(A) (Supp.2000) (suspending compensation of convicted and incarcerated claimants). Raymond timely protested this suspension.

¶ 4 While the ICA hearing process was unfolding, Raymond's wife, Petitioner/Appellant Brenda Hanley, petitioned to dissolve their marriage, with a request that the court order Raymond to pay a "reasonable sum" from his workers' compensation award for child support.[1] Raymond did not object.

¶ 5 Brenda subsequently filed a petition for child support *pendente lite.* She represented that Raymond was not entitled to receive his workers' compensation disability benefits but that these funds were available for child support.

¶ 6 The superior court then entered an order for temporary child support requiring Raymond to pay Brenda the sum of $560.00

---

1. Even if A.R.S. subsection 23–1031(A) applies to an award of disability compensation, if any part of the award has been assigned to satisfy support

obligations under Title 25, that part of the award "shall be paid as provided in the court order." A.R.S. § 23–1031(B).

per month through the Clerk of the Court by assignment from the award to Raymond from the ICA. The court also issued an order of assignment directing the employer or "other payors" of Raymond to send "the amount of *$560.00* per month" to the Clerk of the Superior Court.

¶ 7 The Special Fund received an employer's information sheet with the order of assignment, instructing an employer to withhold *no more than fifty percent of an* employee/obligor's "disposable earnings," defined as earnings remaining after deductions.

¶ 8 The ICA administrative law judge ("ALJ") then suspended Raymond's disability compensation under A.R.S. section 23–1031(A) and ordered that the disability benefits payable to him be subject to child support. Raymond filed an untimely request for review. The Special Fund argued that the ALJ should either dismiss the untimely request for review or affirm the award on the merits. The ALJ then summarily affirmed the award. When Raymond did not request special action review, the decision upon review became final. *See* A.R.S. § 23–943(H) (1995).

¶ 9 Meanwhile, the Special Fund had begun sending Brenda $280.00, fifty percent of Raymond's monthly compensation award, to comply with the order of assignment. Brenda's former attorney wrote the Special Fund insisting that the order required payment of $560.00. The Special Fund responded that it had complied with the order of assignment by following the information sheet that instructed the employer not to pay more than fifty percent of disposable earnings.

¶ 10 On April 28, 1999, the court signed and filed a decree of dissolution of marriage, providing that Raymond "shall pay child support of $560.00 per month if and to the extent he is entitled to receive worker's [sic] compensation benefits from or through the Industrial Commission." The court further ordered that Raymond "shall have no other obligation to pay child support."

¶ 11 The Special Fund continued to pay only $280.00 a month. In December 1999, Brenda's attorney demanded that the Special Fund pay arrearages and $560.00 a month for future monthly payments. When the Special Fund refused this demand, Brenda's attorney filed with the ICA a request for relief under A.R.S. subsection 23–1061(J), naming Raymond as "Applicant" and Brenda on behalf of their children as "Applicant Party in Interest."

¶ 12 On January 21, 2000, the Special Fund filed in superior court a petition for an order to show cause to determine whether the Special Fund had to comply with A.R.S. section 33–1131. It asserted that section 33–1131 exempts fifty percent of the workers' compensation benefits. The Special Fund moved the ICA to dismiss the request for lack of jurisdiction. The ALJ deferred the matter until the superior court ruled in the show cause proceeding.

¶ 13 After the parties submitted memoranda, the superior court entered a minute entry order in favor of the Special Fund:

> The order that is in effect indicates Respondent [Raymond] is responsible for paying child support of $560.00 a month if and to the extent he is entitled to receive worker's [sic] compensation benefits through the Industrial Commission. If Respondent were not incarcerated, he would be entitled to *$560.00 a month but* the Industrial Commission would be sending one-half to the Clearinghouse to satisfy the child support obligation.
>
> The court determines the Industrial Commission, Special Fund Division, is in compliance with the Order of Assignment by withholding up to, but no more than, 50% of Respondent's compensation benefits pursuant to the Order of Assignment dated July 22, 1998[sic].

¶ 14 The ALJ then dismissed the request for relief for lack of jurisdiction and alternatively relied on the superior court's minute entry to deny substantive relief. After the ALJ affirmed on administrative review, Brenda timely filed a Rule 10 petition for special action. This court has jurisdiction under A.R.S. subsection 12–120.21(A)(2) (1992) and A.R.S. subsection 23–951(A) (1995).

¶ 15 The superior court subsequently signed a judgment stating that the Special Fund had complied with the order of assignment by paying fifty percent of Raymond's disability compensation · benefits for child support. Brenda timely filed a notice of appeal. This court has jurisdiction under A.R.S. subsection 12–2101(B).

¶ 16 This court subsequently granted Brenda's unopposed motion to consolidate this appeal with her Rule 10 special action. After the opening brief was filed, the supreme court decided *Aranda v. Industrial Commission*, 198 Ariz. 467, 11 P.3d 1006 (2000), which held that subsection 23–1031(A) is unconstitutionally retroactive if applied to an award of permanent disability compensation benefits that became final before December 1, 1997, provided that the criminal conduct also occurred before that date.[2] *Id.* The court issued its mandate on January 22, 2001.

## DISCUSSION

### A. APPEAL

¶ 17 We first address the appeal from the judgment that found that the Special Fund complied with the order of assignment by paying fifty percent of Raymond's disability compensation for child support. Brenda asserts that this order clearly directed the Special Fund to pay $560.00, the entire amount of Raymond's disability compensation. The Special Fund answers by asserting that the instructions it received, case law, and the exemption of one-half of "disposable earnings" under A.R.S. subsection 33–1131(C) support the judgment.[3]

¶ 18 We begin by acknowledging the unusual positions of the parties. Ordinarily, the parent/obligor would receive the "income" but for the assignment, with some of this income remaining for self support. *See generally* A.R.S. § 25–500(5) (defining "income" to mean any periodic form of payment, including wages and workers' compensation disability benefits); A.R.S. § 25–320 app.

*Arizona Child Support Guidelines* ¶ 12 (defining self support reserve of $645.00) (applicable for actions filed after 10/31/96). Here, the Special Fund had suspended compensation to Raymond who as an incarcerated felon did not need this compensation for self support. In the ordinary case, the neutral employer or payor is obligated to pay all of the wages or workers' compensation disability benefits to someone. Here, when the Special Fund paid only $280.00 to satisfy the order of assignment, it intended to retain the balance of Raymond's benefits.

¶ 19 We turn now to the parties' assertions. Brenda is correct that the order of assignment directed the Special Fund to pay the entire amount of Raymond's disability compensation for child support. Although we agree with Brenda's interpretation of the order of assignment, we disagree that the superior court interpreted this order in its judgment. Rather, the court seemingly exempted $280.00 from the $560.00 specified in the assignment, which it did without citing any authority.

■ ¶ 20 We accordingly consider the Special Fund's attempt to fill this gap. The Special Fund first relies on the instructions it received in the order of assignment. These instructions are administrative interpretations of the law, not legal authority. *Cf., e.g., Aldrich v. Indus. Comm'n*, 176 Ariz. 301, 306, 860 P.2d 1354, 1359 (App.1993) (giving weight to administrative interpretation but independently determining meaning of statute). Moreover, these instructions provide guidance to employers, not payors of workers' compensation disability benefits. In short, the instructions cannot independently support the judgment.

¶ 21 The Special Fund next relies on *Argonaut Insurance Co. v. Lyons*, 159 Ariz. 267, 269–70, 766 P.2d 619, 621–22 (App.1988), which it contends held that the fifty percent exemption under A.R.S. subsection 33–1131(C) extends to workers' compensation disability benefits. *See also Brooks v. Con-*

---

2. Section 23–1031 was effective on April 28, 1997, but any suspension under it may begin on December 1, 1997. *See* A.R.S. § 23–1031.

3. For the purpose of this appeal, we apply the statutes in effect on July 6, 1998, when the Order for Temporary Child Support and the Order of Assignment were filed.

*solidated Freightways Corp. of Del.*, 173 Ariz. 66, 74, 839 P.2d 1111, 1117 (App.1992) (following *Lyons*); cf. *Bagalini v. Ariz. Dep't of Economic Security*, 135 Ariz. 326, 328, 660 P.2d 1253, 1255 (App.1983) (involving unemployment compensation benefits).

¶ 22 The case that actually held that the fifty percent exemption extends to this type of benefit is *Bagalini*. *See* 135 Ariz. at 329, 660 P.2d at 1256 (requiring modification of order of assignment to limit assignment to fifty percent of any unemployment benefits owed to obligor in any given month). In *Lyons* and in *Brooks*, because the orders of assignment were limited to fifty percent of the obligor's workers' compensation disability benefits and the obligee did not claim a greater amount, the courts assumed that this exemption extended to workers' compensation disability benefits. *See Lyons*, 159 Ariz. at 268–70, 766 P.2d at 620–22; *Brooks*, 173 Ariz. at 69–70, 74, 839 P.2d at 1114–15, 1119.

¶ 23 To justify extending the exemption to unemployment compensation benefits, *Bagalini* simply cited A.R.S. subsection 12–2454(A) without analyzing A.R.S. section 33–1131. It assumed that this section extended to benefits such as unemployment compensation.

¶ 24 Unlike the obligees in *Bagalini*, *Lyons*, and *Brooks*, Brenda claims she is entitled to all of Raymond's workers' compensation disability benefits and that neither section 33–1131 nor any other applicable statute exempts workers' compensation benefits from attachment to satisfy a parent's child support obligation. We accordingly must address this issue of first impression in Arizona.

¶ 25 Section 33–1131 provides in relevant part as follows:

A. For the purposes of this section, "disposable earnings" means that remaining portion of a debtor's *wages, salary or compensation for his personal services,* including bonuses and commissions, or otherwise, and includes payments pursuant to a pension or retirement program or deferred compensation plan, after deducting from such earnings those amounts required by law to be withheld.

. . . .

C. The exemptions provided in subsection B do not apply in the case of any order for the support of any person. In such case, *one-half of the disposable earnings of a debtor for any pay period is exempt from process.*

(Emphasis added).

¶ 26 Brenda argues that workers' compensation disability benefits are not "wages, salary or compensation for . . . personal services" under subsection 33–1131(A) and therefore the fifty percent exemption for "disposable earnings" under subsection (C) does not apply to workers' compensation disability benefits. We agree that subsection 33 1131(C) does not directly apply to these benefits inasmuch as they are not compensation for personal services but for loss of earning capacity. *See* A.R.S. §§ 23–1044 –1045; *Savich v. Indus. Comm'n,* 39 Ariz. 266, 270, 5 P.2d 779, 780 (1931).

¶ 27 General wage exemption statutes ordinarily do not apply to workers' compensation disability benefits. *See, e.g.,* 31 Am. Jur.2d *Exemptions* § 63 (1989); *Patton v. Patton,* 573 S.W.2d 71, 72 (Mo.Ct.App.1978); cf., e.g., *Phillips v. Bartolomie,* 46 Cal.App.3d 346, 354, 121 Cal.Rptr. 56 (Cal.Dist.Ct.App. 1975) (concluding that section 1673(b)(2) of Consumer Credit Protection Act does not extend to veterans and social security disability benefits). However, some jurisdictions have enacted specific statutory exceptions to this general rule to provide that wage exemption statutes apply to workers' compensation disability and other similar benefits. *See, e.g.,* Alaska Stat. § 09.38.030(e) (1996) (defining as "earnings" subject to exemption "benefits paid by reason of disability, illness, or unemployment"); Iowa Code § 627.13 (2001) (allowing attachment of workers' compensation benefits within limits imposed under section 1673(b)(2)).

¶ 28 Arizona lacks a statute specifically applying subsection 33–1131(C) to benefits such as workers' compensation disability benefits. Because workers' compensation disability benefits are not compensation for personal services, we must conclude that the fifty percent exemption under A.R.S. subsection 33–1131(C) does not directly apply to

workers' compensation disability benefits. Furthermore, the benefits in question are not the "debtor's," as A.R.S. section 33–1131 phrases it, for that statute seems intended to preserve some income for a "debtor" needing such income for self-maintenance, which is not Raymond's situation.

¶ 29 In summary, because A.R.S. subsection 33–1131(C) does not apply to Raymond's workers' compensation disability benefits, the Special Fund was obligated to comply with the order of assignment by paying the full $560.00 for child support unless and until Raymond successfully moves to modify the order of support and the order of assignment. *See* A.R.S. §§ 25–503(F), 25–504(K).

### B. SPECIAL ACTION

¶ 30 We next address the dismissal of the A.R.S. subsection 23–1061(J) request for relief, requiring the ICA to "investigate and review any claim in which it appears . . . that *the claimant* has not been granted the benefits to which *such claimant* is entitled." A.R.S. § 23–1061(J) (emphasis added).

■ ¶ 31 The ALJ accepted the Special Fund's argument that Raymond is the only "claimant" entitled to relief under this subsection. Brenda attacks this conclusion by arguing that because Raymond's children are entitled to his workers' compensation disability benefits, they are claimants within the meaning of subsection 23–1061(J).

¶ 32 The basic question is whether the ICA is the proper forum to adjudicate the enforcement of an order of assignment. The superior court clearly has jurisdiction. If the ICA also exercises jurisdiction, there is a danger of inconsistent determinations. *See Brooks,* 173 Ariz. at 69–70, 839 P.2d at 1114–15. Thus, even if the ICA could exercise jurisdiction, it should decline to do so. *Cf., e.g., Coonley & Coonley v. Turck,* 173 Ariz. 527, 531–34, 844 P.2d 1177, 1181–84 (App. 1993) (applying doctrine of *forum non conveniens* ).

¶ 33 Although the ALJ dismissed for a different reason, we may affirm an award that reaches the right result on an alternative ground without resolving an unnecessary issue. *See, e.g., Kovacs v. Indus. Comm'n,*

132 Ariz. 173, 176, 644 P.2d 909, 912 (App. 1982). Because of our resolution of the issues, we need not decide whether Raymond's and Brenda's children are claimants under subsection 23–1061(J).

### CONCLUSION

¶ 34 For these reasons, we reverse the judgment and affirm the award and decision upon review dismissing the request for relief under A.R.S. subsection 23–1061(J).

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, MICHAEL D. RYAN, Judge.